UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER THOMPSON,

    Plaintiff,

v.

GENERAL LINEN SUPPLY CO., *et al.*,

    Defendants.

_____/

Case No. 17-cv-13739
Hon. Matthew F. Leitman

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT GENERAL LINEN SUPPLY CO.'S MOTION TO DISMISS THE AMENDED COMPLAINT (ECF #9) AND (2) GRANTING PLAINTIFF LEAVE TO AMEND TO ASSERT BREACH OF CONTRACT CLAIM

In Plaintiff Walter Thompson's Amended Complaint in this action, he asserts ten claims against his former employer, Defendant General Linen Supply Co., and his former union, Unite-Here Local No. 129 (the "Union"). (*See* Am. Compl., ECF #6.) Thompson alleges, among other things, that General Linen underpaid him, terminated his employment without allowing him to participate in a contractually-mandated grievance process, discriminated against him on the basis of his disability, race, and age, and retaliated against him. (*See id.*) He also contends that the Union breached its duty to fairly represent him. (*See id.*) On April 30, 2018, General Linen moved to dismiss a number of Thompson's claims in the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mot. to Dismiss, ECF

1

#9.) For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** General Linen's motion to dismiss.[1]

**I**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to

---

[1] The Court has determined that it may properly resolve the motion to dismiss without a hearing. *See* L.R. 7.1(f).

2

dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II

### A

In Counts III and IV of the Amended Complaint, Thompson brings claims under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. The claims are based upon General Linen's alleged breaches of a collective bargaining agreement between General Linen and the Union (the "CBA"). The Court concludes that these claims are time-barred.

A claim under Section 301 of the LMRA "is governed by the six-month statute of limitations borrowed from section 10(b) of the National Labor Relations Act." *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987). The limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* (internal quotations omitted).

In Count III, Thompson asserts, in relevant part, that General Linen breached the CBA when it discharged him after his first reprimand without making the required grievance process available to him. The six-month limitations period on this claim began to run when Thompson knew or should have known that General Linen terminated him without permitting him to participate in the grievance process

mandated by the CBA. General Linen terminated Thompson's employment on October 13, 2016. Under the CBA, Thompson's grievance process had to commence within 30 working days[2] of that event (*i.e.*, November 12, 2016) and end within 75 working days of that event (*i.e.*, December 27, 2016).[3] (*See* CBA at Art. 14, ECF #9-2 at Pg. ID 324.) Thus, the limitations period for Thompson's claim in Count III began, at the latest, when the grievance process should have ended on December 27, 2016. By that time, it had to have been clear to Thompson that the grievance process had not been made available to him. But Thompson did not file this action until November 16, 2017 – nearly a full year later. Because Thompson waited more than six months to file his Section 301 wrongful-termination in Count III, it is time-barred.

In Count IV of the Amended Complaint, Thompson asserts that General Linen breached the CBA when it failed to pay him (1) the $15.75 hourly rate for maintenance workers and (2) two weeks of vacation pay at his termination. The six-

---

[2] The CBA defines the "regular work week" as "Monday through Sunday." (CBA at Art. 3, ECF #9-2 at Pg. ID 305.)

[3] Step 1 of the grievance process is that a meeting must be completed within 30 days of the event upon which the grievance is based. (*See* CBA at Art. 14, ECF #9-2 at Pg. ID 324.) Step 2 of the grievance process requires that the grievance be reduced to writing within 10 days of the Step 1 meeting, and the employer must respond within 5 days of receiving the grievance. (*See id.*) Step 3 provides that the unresolved grievance may be submitted to arbitration within 30 days. (*See id.*) The 75-day calculation is sum of the times provided under each of the three steps.

month limitations period applicable to this claim began to run when Thompson knew or should have known that he was being underpaid and that he had not received his vacation pay. Thompson alleges that he learned of the underpayment in "early 2016." (Am. Compl. at ¶¶ 24-28, ECF #6 at Pg. ID 208.) And he claims he learned of the alleged failure to pay vacation time at or around the time he was terminated in October 2016. (*See id.* at ¶63, Pg. ID 211.) But he did not bring this action until November of 2017. Thus, Thompson's Section 301 underpayment claims in Count IV are time-barred.

Thompson counters that the statute of limitations should be tolled on his Section 301 claims for two reasons. Neither are persuasive. First, Thompson argues that the statute of limitations should be tolled during the time that the Equal Employment Opportunity Commission (the "EEOC") was investigating claims of retaliation and disability discrimination that he filed with that agency against General Linen. Thompson offers no authority for this proposition. The Court is not persuaded that the EEOC's investigation into *retaliation and disability discrimination* charges should toll the limitations period applicable to Thompson's separate claims that General Linen breached the CBA.

Second, Thompson argues that the statute of limitations should not have run because (1) the Defendants did not give him a copy of the CBA, (2) he evidently did not obtain a copy of the CBA until General Linen filed it as an exhibit to its motion

5

to dismiss his original Complaint, and (3) without the CBA, he "was unable to discover facts related to the breach" of the CBA. (Resp. to Mot. to Dismiss, ECF #10 at Pg. ID 473-74.) But Thompson set forth the key facts underlying his Section 301 claims in his original Complaint which was filed long before he claims to have first seen the CBA. (*See, e.g.*, Compl. at ¶¶ 22-25, 38, 47, ECF #1 at Pg. ID 3, 5, 6.) Thus, Thompson's own conduct in this action belies his claim that he could not have known, and did not know, the relevant facts without a copy of the CBA. Accordingly, the Court declines to equitably toll the statute of limitations on the ground that Thompson was unable to earlier discover the facts underlying his Section 301 claims until he obtained the CBA.

For all of the reasons explained above, Thompson's Section 301 claims in Counts III and IV are time-barred, and the Court will dismiss them.

**B**

In Counts V and VI of the Amended Complaint, Thompson asserts that General Linen retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliot-Larsen Civil Rights Act (the "ELCRA"). Thompson has not plausibly alleged either claim, and he has not exhausted his Title VII retaliation claim. The Court will therefore dismiss these claims.

First, Thompson has not plausibly alleged that he engaged in any protected activity, as required for a retaliation claim under both Title VII and the ELCRA.[4] *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (explaining that an essential element of a retaliation claim under Title VII is that the plaintiff engaged in protected activity). Thompson argues that he engaged in protected activity by "oppos[ing] activity protected by Title VII." (Resp. to Mot. to Dismiss, ECF #10 at Pg. ID 477.) But the factual allegations in his Amended Complaint do not support that argument. Thompson alleges that he opposed purported violations of the CBA and supposed safety violations at his workplace. (*See* Am. Compl. at ¶111, ECF #6 at Pg. ID 216.) Neither of those matters are protected by Title VII. *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009) ("Title VII makes it 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" (quoting 42 U.S.C. § 2000e-2(a)(1))). Because Thompson has not alleged that he engaged in protected activity by opposing violations of Title VII, the Court will dismiss his retaliation claims under Title VII and the ELCRA.

---

[4] The same analysis for Title VII claims apply for ELCRA retaliation claims. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

Second, Thompson has failed to exhaust his Title VII retaliation claim with the EEOC. An employee alleging a Title VII claim must exhaust his administrative remedies with the EEOC. *See Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 731 (6th Cir. 2006). This requirement is not intended to be "overly rigid," but the claim must be "reasonably expected to grow out of the charge of discrimination" filed with the EEOC. *Id.* In Thompson's sole EEOC charge filed after his termination, he checked the boxes for "Retaliation" and "Disability," but he did not claim retaliation based upon Title VII protected activity. (*See* EEOC Charge, ECF #9-5.) Instead, in the narrative portion of the EEOC charge, Thompson described only how he was paid less than other maintenance workers and that he was terminated following a chemical spill. (*See id.* at Pg. ID 347.) He concluded the narrative portion by insisting that he "was denied equal wages and discharged due to [his] disability, and in retaliation for complaining of unequal wages, *in violation of the Americans with Disabilities Act of 1990, as amended.*" (*Id.*; emphasis added.) Nothing in Thompson's charge suggested that he was complaining about retaliation for Title VII protected activity. Nor would a Title VII retaliation claim be reasonably expected to grow out of a charge focused on his unequal wages and termination *due to his disability*. Thompson has therefore failed to exhaust this claim.

The Sixth Circuit recently concluded that a Title VII retaliation claim was not exhausted under similar circumstances. In *Russ v. Memphis Light Gas & Water*

8

*Division*, the plaintiff's EEOC charge only had "checked [ ] boxes indicating discrimination based on 'Retaliation' and 'Disability,' but left all other boxes blank." 720 F. App'x 229, 232-33 (6th Cir. 2017). In addition, the narrative portion of the charge only mentioned disability discrimination. *See id.* at 233. The Sixth Circuit held that the Title VII retaliation claim was not exhausted because it "was neither reasonably related to the factual allegations in the charge, nor could it have grown out of them." *Id.* at 237. Here, like the plaintiff in *Russ*, Thompson checked only the "Retaliation" and "Disability" boxes and described only disability discrimination in his EEOC charge. Thus, Thompson's Title VII retaliation claim fails for lack of exhaustion.

## C

In Count VII of the Amended Complaint, Thompson asserts that General Linen discriminated against him on the basis of his race in violation of the ELCRA. Thompson has not plausibly alleged this claim. The Amended Complaint lacks any factual allegations of race discrimination. Instead, Thompson relies solely on legal conclusions and "threadbare" recitals of the elements of a race discrimination claim. *Twombly*, 550 U.S. at 556. Thompson's claim is therefore not plausibly alleged, and it is properly dismissed.

**D**

In Count VIII of the Amended Complaint, Thompson asserts that General Linen discriminated against him on the basis of his age in violation of the ELCRA. Thompson has stated a plausible age discrimination claim. Thompson alleges that he was terminated for spilling chemicals, but younger maintenance workers did not face any discipline when they spilled chemicals. (*See* Am. Compl. at ¶¶ 50-54, ECF #6 at Pg. ID 210.) Those allegations are sufficient to state a plausible claim. And the Court is not persuaded by General Linen's argument that Thompson's statements in his EEOC charge bar him from proceeding with this state-law claim.

Accordingly, the Court denies General Linen's motion to dismiss Thompson's age discrimination claim.

**E**

In Count IX of the Amended Complaint, Thompson asserts a claim for unjust enrichment. Thompson insists that General Linen was unjustly enriched when it underpaid him. General Linen argues that the claim fails because Thompson alleges that his employment was governed by an express contract – *i.e.*, the CBA. (Mot. to Dismiss, ECF #9 at Pg. ID 296.) The Court declines to dismiss the unjust enrichment claim at this time.

General Linen may ultimately be correct: if Thompson's employment was governed by the CBA, Thompson may be precluded from pursuing an unjust

enrichment claim. But at this point, the Court will construe Thompson's unjust enrichment claim as one permissibly presented in the alternative – on the theory that his employment was not covered by the CBA. Such alternative pleading is permissible. The Court will entertain General Linen's attacks on Thompson's unjust enrichment claim at the summary judgment stage of these proceedings.

F

Finally, in Count X of the Amended Complaint, Thompson asserts that General Linen negligently trained and supervised its employees. More specifically, he claims that General Linen owed him "a duty to properly train and supervise [its] employees so that the workplace is free from unnecessary hazard." (Am. Compl. at ¶165, ECF #6 at Pg. ID 222.) And he alleges that General Linen breached that duty by not training maintenance workers properly. (*See id.* at ¶165, Pg. ID 222.) Thompson claims he was injured in two accidents as a result of the allegedly-deficient training and supervision. (*See id.* at ¶¶ 18, 32-35, Pg. ID 208-09.)

General Linen argues that this claim fails because an employer owes a duty only to the general public to reasonably supervise and train its employees. General Linen has cited two cases in support of this argument.[5] Thompson offers no response

---

[5] *See Mueller v. Brannigan Bros. Restaurants & Taverns, LLC*, __ N.W.2d __, 2018 WL 1611479, at *3 (Mich. Ct. App. Apr. 3, 2018) ("[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." (emphasis added)); *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d

11

to the case law cited by General Linen. Instead, he merely repeats his allegations that General Linen failed to maintain a safe workplace. The case law cited by General Linen appears to control and to support dismissal of Thompson's negligence claim on the basis that Thompson may not bring a claim for negligent supervision/training of employees against his employer.[6] Accordingly, the Court will dismiss that claim.

## III

In his response to General Linen's motion to dismiss, Thompson asks the Court to allow him to file a Second Amended Complaint to assert a breach of

---

220, 232 n.6 (Mich. 2006) (Kelly, J. dissenting on other grounds) ("Negligent supervising, like negligent hiring and retention, requires knowledge on the part of the employer that special circumstances exist that could establish *a duty to protect third persons*." (citing *Millross v. Blum Hollow Golf Club*, 413 N.W.2d 17 (Mich. 1987)) (emphasis added)); *see also Prime Rate Premium Fin. Corp. v. Larson*, 226 F. Supp. 3d 858, 870 (E.D. Mich. 2016) (applying Michigan law) ("In a negligent supervision claim, the first two elements are based on the duty of care imposed on an employer in the hiring and supervision of employees, such that an employer may be liable if he knew or should have known that an employee had criminal tendencies ... and placed that employee in a position to meet *members of the public*." (internal quotation marks omitted) (emphasis added)); *Tyus v. Booth*, 235 N.W.2d 69, 71 (Mich. Ct. App. 1975) ("The duty [of an employer] is to use reasonable care to assure that the employee known to have violent propensities is not unreasonably exposed *to the public*." (emphasis added)).

[6] Although neither party mentioned the issue, the Court questions whether Thompson's negligence claim against his employer – in which he seeks to recover damages for personal injuries suffered in workplace accidents – is barred by the exclusive remedy provision of Michigan's Workers' Compensation Disability Act. *See* Mich. Comp. Laws § 418.131(1).

contract claim against General Linen. (*See* Resp. to Mot. to Dismiss, ECF #10 at Pg. ID 476.) Thompson further states that "[he] would be agreeable to dismissal of [the Union]" if allowed to amend the Amended Complaint. (*Id.*) The Court concludes that allowing Thompson to amend in order to assert a breach of contract claim is appropriate. The Court thus will allow Thompson to file a Second Amended Complaint to include a breach of contract claim. In Thompson's Second Amended Complaint, he may add a breach of contract claim and reassert both those claims deemed viable above and claims that General Linen did not move to dismiss.

## IV

For all of these reasons, **IT IS HEREBY ORDERED** that General Linen's motion to dismiss (ECF #9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- General Linen's motion to dismiss is **GRANTED** as to Thompson's claims against it in Counts III, IV, V, VI, VII and X of the Amended Complaint; and

- General Linen's Motion to Dismiss is **DENIED** as to Thompson's claims in Counts VIII and IX of the Amended Complaint.

**IT IS FURTHER ORDERED** that, by not later than **August 23, 2018**, Thompson may file a Second Amended Complaint that (1) includes a breach of contract claim and (2) reasserts claims from the Amended Complaint that (a) the

13

Court did not dismiss above or (b) General Linen did not seek to dismiss. By not later than **September 13, 2018**, General Linen shall answer or otherwise respond to the Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: August 9, 2018

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 9, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764