UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER THOMPSON

    Plaintiff,

v.

GENERAL LINEN SUPPLY CO., *et al.*,

    Defendants.

Case No. 17-cv-13739
Hon. Matthew F. Leitman

_____/

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 27) ON FEDERAL CLAIM AND (2) DISMISSING STATE-LAW CLAIMS WITHOUT PREJUDICE

In this action, Plaintiff Walter Thompson alleges that his former employer, Defendant General Linen and Supply Co., underpaid him, wrongly terminated his employment, and discriminated against him on the basis of his disability and age. (*See* Sec. Am. Compl., ECF No. 16.) Thompson brings one federal claim – a discrimination claim under the Americans with Disabilities Act (the "ADA") – and four state-law claims. (*See id.*) General Linen has now moved for summary judgment on all of Thompson's claims. (*See* Mot. for Summ. J., ECF No. 27.) For the reasons that follow, the Court **GRANTS** the motion with respect to Thompson's ADA claim, **DECLINES** to exercise supplemental jurisdiction over Thompson's remaining state-law claims, and **DISMISSES** those state-law claims **WITHOUT PREJUDICE**.

1

# I

General Linen is in the business of renting, laundering, and selling linens and uniforms. In May 2012, General Linen hired Thompson as a linen sorter. (*See* Thompson Dep. at 76-77, ECF No. 28-1, PageID.968.) General Linen eventually promoted Thompson to a maintenance position.[1] (*See id.* at 91-92, PageID.972.)

On July 14, 2016, Jack Reedy, one of Thompson's supervisors, gave Thompson a written performance evaluation. (*See* Evaluation, ECF No. 27-12.) Thompson acknowledged his receipt of the evaluation by signing it. (*See id.*, PageID.824.) In the evaluation, Reedy praised Thompson's "ambition" and willingness to "improve," and Reedy told Thompson to "stay the course so we can get you to the next level." (*Id.*, PageID.823.) Reedy also highlighted for Thompson General Linen's safety procedures. (*See id.*, PageID.822.) More specifically, Reedy told Thompson to "[a]lways use [the] lockout procedure." (*Id.*)

The "lockout procedure" that Reedy referenced is a safety practice that General Linen established in an effort to avoid certain workplace injuries. (*See* Lockout Procedure, ECF No. 27-13.) The lockout procedure requires General Linen employees, prior to repairing or performing maintenance on a piece of equipment,

---

[1] The parties vigorously dispute the nature of Thompson's promotion, the precise role to which Thompson was promoted, and whether Thompson remained in a union after his promotion. The Court need not definitively resolve any of these disputes because they are not germane to the Court's substantive ruling herein – which is confined to Thompson's ADA claim.

to turn the machine off, "lock out the power," and "release, drain, and lock out any stored energy." (*Id.*, PageID.825.) Importantly, General Linen also instructs its employees to place a "lockout tag" on any machine they are working on so that it "can't be started up accidentally" by another employee. (*Id.*)

On August 13, 2016, Thompson was performing maintenance work on an ironing machine. (*See* Thompson Dep. at 148-152, ECF No. 28-1, PageID.986-987.) Thompson did not follow the "lockout procedure" and did not place a lockout tag on the machine. (*See* Disciplinary Notice, ECF No. 27-14, PageID.826.) While Thompson was conducting his maintenance work, another employee activated the machine. (*See id.*; *see also* Thompson Dep. at 150, ECF No. 28-1, PageID.987.) The "whole machine [then] slammed down on [Thompson's middle] finger and broke it." (Thompson Dep. at 150, ECF No. 28-1, PageID.987.) Thompson's middle finger was seriously injured, and Thompson ultimately required surgery to repair the finger. (*See* Medical Records, ECF No. 30-7.)

Following the August 13 incident, General Linen issued a "disciplinary notice" to Thompson due to his failure to use the lockout procedure. (*See* Disciplinary Notice, ECF No. 27-14.) General Linen also suspended Thompson for two days and informed him that his next violation of the company's "general rules" would result in his "discharge." (*Id.*, PageID.826.)

Thompson had surgery on his middle finger in late August 2016, and he returned to work shortly thereafter. (*See* Thompson Dep. at 156-58, ECF No. 28-1, PageID.988-989.)  On September 5, 2016, Thompson was involved in an incident involving a chemical spill.  Thompson prepared a written statement after that incident, and he acknowledged that he caused the spill when he "misjudge[d] the level of [] chemical" in a chemical vat. (Thompson Statement, ECF No. 27-17.)

On October 7, 2016, Thompson was involved in a second chemical spill.  In connection with that incident, Walter Johnson, a General Linen employee, suffered minor chemical burns.  (*See* Statement of General Linen Employee Walter Johnson, ECF No. 27-19; Statement of Jack Reedy, ECF No. 27-20.)  Johnson told his supervisors that Thompson was responsible for the spill. (*See* Reedy Statement, ECF No. 27-20.)

One week later, on October 13, 2016, General Linen fired Thompson.  The accompanying "Personnel Action Form" listed the "reason" for his discharge as: "Discharge due to safety." (Personnel Action Form, ECF No. 27-20.)  Thompson says that he was "probably" informed orally that the chemical spills played a role in his discharge. (Thompson Dep. at 170, ECF No. 28-1, PageID.992.)  Thompson insists that chemical spills happen all the time at General Linen and that, other than him, "nobody never got fired from here for a [chemical] spill." (*Id.*)

## II

Thompson filed this action on November 16, 2017. (*See* Compl., ECF No. 1.) In the Second Amended Complaint, the operative pleading in this action, Thompson brings one federal claim and four state-law claims against General Linen. (*See* Sec. Am. Compl., ECF No. 16.) The claims are as follows:

- "Disability Harassment-Discrimination in violation of the Americans with Disabilities Act of 1990" (*see id.* at ¶¶ 69-74, ECF No. 16, PageID.565);

- "Harassment-Discrimination on the Basis of a Disability in violation of the Michigan Persons with Disabilities Act" (*see id.* at ¶¶ 75-82, PageID.565-566);

- "Discrimination on the Basis of Age in Violation of [Michigan's] Elliot Larsen Civil Rights Act" (*see id.* at ¶¶ 83-90, PageID.566);

- "Breach of Contract" (*see id.* at ¶¶ 91-96, PageID.567); and

- "Unjust Enrichment" (*see id*. at ¶¶ 97-105, PageID.567-568).

General Linen moved for summary judgment on Thompson's federal ADA claim and his state-law claims on November 29, 2019. (*See* Mot. for Summ. J., ECF No. 27.) Thompson filed a response to the motion on January 3, 2020, and General Linen has filed a reply. (*See* Thompson Resp. Br., ECF No. 30; General Linen Reply Br., ECF No. 32.) Pursuant to Local Rule 7.1(f)(2), the Court concludes that General Linen's motion may be resolved without oral argument.

## III

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

## IV

### A

Count I of Thompson's Second Amended Complaint is titled "Disability Harassment-Discrimination in violation of the Americans with Disabilities Act of 1990." (Sec. Am. Comp., ECF No. 16, PageID.565.) General Linen moved for summary judgment on both aspects of this ADA claim: harassment and discrimination. (*See* Mot. for Summ. J., ECF No. 27, PageID.707-716.) In Thompson's response to General Linen's motion, he did not address the harassment

component of his ADA claim. (*See* Thompson Resp. to Mot. for Summ. J., ECF No. 30.) And Thompson appeared to confirm that he was only bringing a discrimination claim under the ADA, not a harassment claim. (*See id.*, PageID.1056: "The paragraphs under the headings in [the] amended complaint clearly relate to discrimination on the basis of [Thompson's] disability.") Thus, to the extent Thompson raised a disability harassment claim in his Second Amended Complaint, the Court considers that claim abandoned, and it grants General Linen summary judgment with respect to that claim. *See Mathews v. Massage Green LLC*, 2016 WL 1242354, at *12 (E.D. Mich. Mar. 30, 2016) ("Sixth Circuit jurisprudence is clear: a plaintiff is deemed to have abandoned a claim when [he] fails to address it in response to a motion for summary judgment"); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment).[2]

The only ADA claim remaining for the Court to analyze is therefore Thompson's disability discrimination claim. "To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled,

---

[2] *See also Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir. 2003) (same).

(2) is otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 995, 891 (6th Cir. 2016). "A plaintiff [make this showing] by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination." *Id.* (internal quotation marks omitted).

Here, Thompson seeks to establish his ADA discrimination claim using "the indirect method." (Thompson Resp. to Mot. for Summ. J., ECF No. 30, PageID.1055.) "The indirect method adapts the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework." *Ferrari*, 826 F.3d at 891. "To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.* A plaintiff may alternatively satisfy the fifth prong of the *prima facie* case by "by showing that similarly situated non-disabled employees were treated more favorably." *Rosebrough v. Buckeye Valley High School*, 690 F.3d

427, 431 n.2 (6th Cir. 2012). If a "plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to offer a legitimate explanation for its action. If the defendant does so, the burden then shifts back to the plaintiff, who must introduce evidence showing that the proffered explanation is pretextual." *Ferrari*, 826 F.3d at 891 (internal quotation marks and citations omitted).

## B

General Linen argues it is entitled to summary judgment on Thompson's ADA discrimination claim because Thompson cannot "meet the first, fourth, or fifth" elements of his *prima facie* case. (Mot. for Sumnm. J., ECF No. 27, PageID.709.) The Court agrees that Thompson has not satisfied his burden to establish the fifth element of his *prima facie* claim of discrimination under the ADA.[3] As explained above, a plaintiff may satisfy that element by showing either that (1) the plaintiff was replaced or that his position remained open while the employer sought other applicants for the position or (2) similarly-situated, non-disabled employees were treated more favorably than the plaintiff. Thompson has shown neither.

### 1

Thompson has not identified any evidence in the record that he was replaced or that his position remained open while General Linen sought other applicants for

---

[3] Because the Court concludes that Thompson cannot satisfy the fifth element of his *prima facie* case, it need not decide whether he has also failed to satisfy any of the other required elements of that claim.

9

the position. Thompson does not attempt to show that he was replaced. Instead, he attempts to demonstrate only that General Linen kept his position open and attempted to fill it. (*See* Thompson Resp. to Mot. for Summ. J., ECF No. 30, PageID.1057.) The only evidence he cites in support of this contention is the following testimony by General Linen supervisor Tommy Mosley:

> Q: Do you have anybody that is a janitor/PM?
>
> A: No.

(*Id.*; quoting Mosley Dep. at 111, ECF No. 27-9, PageID.781.)

But the fact that nobody is currently performing Thompson's old job does not mean that his position is still open or that General Linen has taken any action to replace Thompson. And Thompson has not identified any evidence in the record that General Linen has solicited or accepted applications, interviewed potential replacements, or taken any other action to fill Thompson's previous role. Indeed, Thompson has not even presented any evidence that the position still exists. For all of these reasons, Thompson has not satisfied the fifth element of his *prima facie* case with sufficient proof that General Linen kept his position open and tried to fill it.

**2**

The Court next turns to Thompson's argument that General Linen treated similar-situated, non-disabled employees more favorably than it treated him. In order to establish the fifth element of his *prima facie* case in this manner, Thompson

must "demonstrate that he [] is similarly situated to the [claimed comparator] in all relevant respects." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 917 (6th Cir. 2013). When determining whether a plaintiff has made such a showing, courts may look "to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks omitted). Thompson has failed to make the required showing.

a

Thompson contends that General Linen treated him less favorably than other employees who committed chemical spills. Thompson insists that while he was fired for overspilling a chemical vat, "[n]early all of [General Linen's] maintenance employees have overfilled at least one chemical vat, at least once during their employment, without receiving as much as a write up." (Sec. Am. Compl. at ¶51, ECF No. 16, PageID.563.) But when asked to identify specific overspill comparators at his deposition, Thompson could identify only one: a maintenance worker named Antonio Cage. (*See* Thompson Dep. at 170-71, ECF No. 28-1, PageID.992.) According to Thompson, Cage also was responsible for a chemical overspill, and General Linen did not terminate Cage. (*See id.*) But Thompson has

not presented any evidence that General Linen ever knew about that spill. In fact, Thompson testified that he and Cage "cleaned it up" immediately after it happened. (*Id.* at 173, PageID.992.) Because Thompson has not shown that General Linen was aware of Cage's spill, he (Thompson) cannot possibly establish that General Linen responded differently to Cage's spill than to his.

Moreover, with respect to Cage's spill, Thompson further acknowledged that:

- He did not know when Cage's overspill occurred;
- He did not know what kind of overspill it was (*i.e.*, whether something non-dangerous like soap spilled or whether it was a dangerous chemical like the alkali chemical Thompson had spilled);
- He did not know how the overspill happened;
- He did not know if the spilled chemical came into contact with anyone or if the spilled chemical had injured anyone; and
- He did not know Cage's past disciplinary record or if Cage had been written-up for any previous safety violations.

(*See id.* at 172-174, PageID.992-993.) On this record, Thompson has not shown that Cage is a similarly-situated comparator for purposes of Thompson's *prima facie* case.

Thompson also testified that an unidentified "truck driver … overspilled a little bit." (*Id.* at 174, PageID.993.) But Thompson could not identify the truck

driver, has not shown that General Linen was aware of the unidentified driver's spill, and has not shown that the truck driver was comparable to him in other ways (*i.e.*, that the driver had a similar disciplinary record or whether the driver's spill injured anyone). Simply put, Thompson has failed to show that General Linen treated any non-disabled, similarly-situated employees who committed spills more favorably than him.

**b**

Thompson next argues that he was treated less favorably than General Linen employees who committed other safety violations. For instance, Thompson says that "other maintenance employees do not lock out machines, yet he is the only person to purportedly be punished for said offense." (Thompson Resp. to Mot. for Summ. J., ECF No. 30, PageID.1058.) But Thompson has not presented sufficient evidence to establish that the unidentified maintenance employees he references are non-disabled and are similarly-situated to him. For example, he does not identify the particular maintenance employees who "do not lock out machines" and were not punished for those offenses, and he does not provide any proof that these employees were not disabled. Nor does he identify evidence that General Linen was aware of these other employees' failures to follow the lockout procedure. Finally, he provides no proof about (1) the past safety violation history of the unidentified employees who failed to follow the lockout procedure or (2) whether the failures by those

13

employees to follow the lockout procedures led to any injuries (like Thompson's failure did). For all of these reasons, Thompson has failed to show that General Linen treated other similarly-situated, non-disabled employees who did not follow the lockout procedure more favorably than it treated him.

c

Thompson further argues that he was treated less favorably than the General Linen employee who started the ironing machine when Thompson was working on that machine and failed to lock it out. Thompson says that this employee "did not receive discipline for his infractions" even though the employee "committed two safety violations: (1) not looking at the [ironing] machine before turning it on; and (2) starting a piece of equipment while it was being operated, severely injuring [Thompson's finger]." (*Id.*) This argument fails for several reasons.

First, Thompson has not identified any evidence that the employee who started the ironing machine is not disabled. Because Thompson has not directed the Court to such evidence, he may not rely upon General Linen's treatment of that employee to satisfy the fifth prong of his *prima facie* case – which focuses on a defendant's treatment of "similarly situated *non-disabled employees*." *Rosebrough,* 690 F.3d at 431 n.2 (emphasis added).[4]

---

[4] Nor is it the Court's obligation or responsibility to comb the record to search for evidence that the employee who started the ironing machine was non-disabled. *See, e.g.*, *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-05 (6th Cir. 1992)

14

Second, Thompson has not directed the Court to any evidence that the other employee actually committed a violation of General Linen's safety policies when that employee started the ironing machine. Thompson supports his contention that the other employee committed a safety violation with citations to two aspects of supervisor Mosley's testimony. Thompson first cites to Mosley's deposition at page 189. (*See* Thompson Resp. to Mot. for Summ. J., ECF No. 30, PageID.1053.) But Mosley's deposition does not have a page 189, so that citation does not support Thompson's argument that the other employee violated General Linen's safety policies. (*See* Mosley Dep., ECF No. 30-2.) Thompson also cites to Mosley's deposition at page 82. (*See* Thompson Resp. to Mot. for Summ. J., ECF No. 30, PageID.1054.) Thompson cites that page of Mosley's deposition for the proposition that "the employee who turned on the machine without checking to see if it was being worked on or even looking at [sic] was not disciplined." (*Id.*) But while Mosley does admit on that page of his deposition that the employee in question was not disciplined, Mosley did not admit in that testimony that other employee actually

---

(internal quotation marks omitted) (noting that "there is no duty imposed upon the trial court to search the entire record to establish that it is bereft of a genuine issue of material fact" and that "[n]othing in either the [Federal] Rules [of Civil Procedure] or case law supports an argument that the trial court must conduct its own probing investigation of the record"); *Bormuth v. County of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (quoting *Guarino*, 980 F.2d at 410) ("[A] district court is not obligated to 'comb the record from the partisan perspective of an advocate for the non-moving party.'").

violated General Linen's safety policies. In fact, Mosley never testified that the other employee acted contrary to those policies.[5] Thus, Thompson may not rely on Mosley's testimony to establish that the other employee violated a General Linen safety policy.

Third, Thompson has not identified any evidence that the alleged violation of General Linen's safety policies by the other employee was of the same magnitude as Thompson's violations. Thompson appears to assume that all violations of General Linen's safety policies are treated the same. But he has not presented any proof to support that assumption, and he does not take into account that the

---

[5] Thompson's counsel asked Mosley a long series of questions about whether it would be a violation of General Linen's safety policies for an employee to start a machine with another employee's hand in the machine. (*See* Mosley Dep. at 82-96, PageID.1087-1090.) This lengthy back-and-forth is confusing and difficult to follow. Mosley appeared to make the following two points during this exchange: (1) an employee would not violate General Linen's safety policies if he turned on a machine without knowing that another employee's hand was in the machine (*see id.* at 84, 91, PageID.1087, 1089), *and* (2) an employee would violate General Linen's safety policies if he turned on a machine with knowledge that another employee's hand was in the machine (*see id.* at 91-92, PageID.1089). Thompson has not identified for the Court any evidence that the employee who started the machine knew that Thompson was working on it at that time. More importantly, Thompson has not pointed to any evidence that General Linen was informed that the other employee knew Thompson's hand was in the machine when the employee started the machine. Without such evidence, Thompson cannot establish that General Linen knew that he and the other employee both committed safety violations yet treated the other employee more favorably.

16

circumstances surrounding different violations may have different levels of fault and may be treated differently.

Finally, even if Thompson had established that the unidentified employee did violate General Linen's safety policies and that General Linen was aware of that violation, Thompson's ADA claim would still fail because Thompson has not presented sufficient evidence that he is similarly-situated to the other employee. For instance, Thompson has not presented any evidence as to whether that employee's safety and disciplinary record resembled his record; whether General Linen had given the other employee safety training like that it had given to Thompson; whether that employee had caused other injuries to co-employees, as Thompson did; whether the employee's years of service with General Linen corresponded with Thompson's time on the job; and whether that employee shared the same supervisor (or even worked in the same department) as Thompson. Simply put, Thompson tells the Court *nothing* about the other employee beyond the fact that the employee activated the ironing machine while Thompson's hand was in it. Thompson has thus failed to carry his burden of showing that the other employee was similarly-situated to him.

For all of these reasons, on this record, Thompson simply has not identified sufficient evidence upon which the Court could conclude that he satisfied the fifth element of his *prima facie* case. Defendants are therefore entitled to summary judgment on Thompson's ADA discrimination claim.

V

Thompson's four remaining claims all arise under state law. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). Indeed, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (affirming district court decision to decline supplemental jurisdiction over state-law claims).

The Court will follow that "usual course" here. Thompson's remaining state-law claims are best decided by the state courts. Accordingly, the Court will decline to exercise supplemental jurisdiction over those claims and will dismiss Thompson's non-federal claims without prejudice. *See Blajei v. Ford Motor Co.*, 2010 WL 3518062, at ** 1-2 (E.D. Mich. Sept. 8, 2010) (granting summary judgment on ADA discrimination claim, declining to rule on portions of summary judgment motion addressing state-law discrimination claims, declining to exercise supplemental jurisdiction over state-law claims, and noting that "if Plaintiff chooses to re-file his claim in state court …. Ford may renew its motion for summary judgment on Plaintiff's [Michigan Persons with Disabilities Act] claim…, and the case will be in

the same procedural posture it was in here before the action was dismissed"); *Taylor v. City of Detroit*, 2007 WL 201010, at *7 (E.D. Mich. Jan. 23, 2007) (granting summary judgment on federal claims, declining to exercise supplemental jurisdiction over remaining state-law claims, and denying "as moot" portions of defendant's motion for summary judgment directed at state-law claims).

## VI

For all of the reasons stated above, General Linen's motion for summary judgment (ECF No. 32) is **GRANTED** in favor of General Linen on Thompson's federal ADA claim (Count I of the Second Amended Complaint). The Court further **DECLINES** supplemental jurisdiction over Thompson's remaining state-law claims, and the Court **DISMISSES** those claims **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 13, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764